UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONITRONICS INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:16-CV-02716-M |
| SKYLINE SECURITY MANAGEMENT, INC. and EDWIN ARROYAVE, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two separate Fed. R. Civ. P. 12(b)(6) Motions to Dismiss and, in the alternative, Fed. R. Civ. P. 12(e) Motions for More Definite Statement, filed by Defendants Skyline Security Management, Inc. ("Skyline") [ECF #9] and Edwin Arroyave ("Arroyave") [ECF #11]. For the following reasons, the Motions are DENIED.

### Background[1]

Monitronics International, Inc. ("Plaintiff" or "Monitronics") is in the business of providing security alarm monitoring services to residential and business customers throughout the United States. *See* Pl. Compl. [ECF #1] at 4, ¶7. Defendant Skyline is an independent security alarm installation and monitoring company, which is owned and controlled by Defendant Arroyave. *See id.* at 2, ¶4. Plaintiff alleges Monitronics entered into a dealer relationship with Skyline in January 2009, pursuant to which Skyline sold security

---

[1] In its recitation of the facts, the Court accepts all well-pleaded facts in the Complaint as true, and views them in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

1

alarm equipment to individual customers and then assigned the related alarm monitoring contracts to Plaintiff under the terms of an Alarm Monitoring Purchase Agreement ("AMPA"). *See id.* at 4, ¶¶8-10. Over the course of the parties' five-year relationship, Plaintiff allegedly paid Skyline more than $50 million for the assignment of approximately 30,000 alarm monitoring contracts. *Id.* at 5, ¶¶ 20-21.

The AMPA contains various restrictive covenants prohibiting Skyline from soliciting Monitronics customers. In particular, paragraph 2.03(a) of the AMPA provides for a 15-year restriction on Skyline's solicitation of customer accounts Skyline sold to Monitronics:

> *Seller [Skyline] agrees with Purchaser [Monitronics] that neither Seller nor any of its shareholders, partners, members, owners, officers, directors, agents or employees shall, at any time within fifteen (15) years from the date such [Subscriber Contract] was acquired by Purchaser from Seller, directly or indirectly, in any capacity, contact, solicit or attempt to solicit or accept unsolicited monitoring or alarm installation business from the Subscriber to whom such Contract related, . . .* Purchaser and Seller agree that the amount of damage resulting to Purchaser from a violation of this Section is difficult to ascertain and quantify, and therefore Seller acknowledges and agrees that Purchaser shall be entitled to liquidated damages from Seller in the amount of any affected Contract's monthly payment to Purchaser multiplied by fifty ("Liquidated Damage Provision"), in addition to permanent injunctive and other applicable relief.

*See id.* at 6-7, ¶27; *see also id.*, Ex. A at 4, ¶2.03(a) (emphasis added). Plaintiff alleges that this provision prohibited Skyline from re-soliciting the very same customer accounts that Skyline originated and sold to Monitronics, pursuant to the AMPA. *Id.* at 7, ¶28.

The AMPA also contains a broader, two-year restriction affecting all Monitronics customer accounts. Paragraph 2.03(b) of the AMPA provides, in pertinent part:

> *Seller [Skyline] further agrees that during the term of this Agreement, and for a period of twenty four (24) months following any termination or expiration of this Agreement, that neither it,*

> *nor any of its shareholders, partners, members, owners, officers, directors, agents or employees shall solicit, market or sell alarm monitoring services or contracts to any current customer(s) of Purchaser [Monitronics]. . . Purchaser and Seller agree that the amount of damage resulting to Purchaser from a violation of this Section is difficult to ascertain and quantify, and therefore Seller acknowledges and agrees that Purchaser shall be entitled to liquidated damages from Seller in the amount of any affected Contract's monthly payment to Purchaser multiplied by fifty ("Liquidated Damage Provision"), in addition to permanent injunctive and other applicable relief.*

*See id.* at 7-8, ¶32; *see also id.*, Ex. A at 4, ¶2.03(b) (emphasis added). Plaintiff alleges that this provision prohibited Skyline from trying to switch any Monitronics customer to another alarm monitoring service for a period of two years after the termination of the Monitronics/Skyline relationship. *Id.* at 7, ¶29.

Plaintiff alleges that Arroyave, as Skyline's owner, agreed to be individually bound by, and responsible for any breach of, the restrictive covenants contained in the AMPA. Page 15 of the AMPA between Skyline and Monitronics provides:

> *The persons listed below hereby represent and warrant that they are all the shareholders, partners, members or owners of Seller [Skyline], as applicable, and that they hereby join in execution of this Agreement in order to signify their agreement to be personally bound by the non-solicitation provisions of Section 2.03, . . . as if each of their individual names were stated in place of "Seller" in Sections 2.03, . . . and each of the undersigned further represents, warrants and acknowledges that each of such persons has received a substantial benefit from Purchaser [Monitronics] by virtue of this Agreement between Purchaser and Seller and, therefore, good and valuable consideration has been given to each of the undersigned for the agreement by each of the undersigned to be personally bound by the provisions of Sections 2.03 . . . .*

*See id.* at 9, ¶51; *see also id.*, Ex. A at 15 (emphasis added). Arroyave signed page 15 identifying himself as "all the shareholders, partners, members or owners of" Skyline and

3

agreeing to be personally bound by the non-solicitation provisions of paragraph 2.03 of the AMPA. *See id.*, Ex. A at 15. Arroyave also signed a separate "Individual Non-solicitation/Non-compete Agreement," pursuant to which Arroyave agreed not to solicit any of the accounts Skyline sold to Monitronics for a period of fifteen years. *Id.* at 9-10, ¶¶42-44. Arroyave's Individual Non-solicitation Agreement provides, in pertinent part:

> *Principal(s) [Arroyave] agree(s) with Purchaser [Monitronics] that Principal(s) shall not, at any time within fifteen (15) years from the date such Contract was acquired by Purchaser from Seller, directly or indirectly, in any capacity (including, without limitation, for himself/herself or on behalf of any other person or entity as an employee, officer, director, partner, agent, consultant, shareholder, member, owner or otherwise), contact, solicit or attempt to solicit or accept unsolicited monitoring or alarm installation business from the Subscriber to whom such Contract related.* Purchaser and Principal(s) agree(s) that the amount of damage resulting to Purchaser from a violation of this Section is difficult to ascertain and acknowledge that Purchaser shall be entitled to liquidated damages from the Principal who violated the covenant in the amount of any affected Contract's monthly payment to Purchaser multiplied by fifty ("Liquidated Damage Provision"), in addition to permanent injunctive and other applicable relief.

*Id.* at 9-10, ¶43; *see also id.* Ex. A at 23-24 (emphasis added).

Plaintiff further alleges that, within days after the parties terminated their relationship in February 2014, Defendants began soliciting Monitronics customers in violation of the restrictive covenants contained in the AMPA and Arroyave's Individual Non-solicitation Agreement. *Id.* at 11, ¶¶49-50. According to Plaintiff, "Defendants have solicited nearly one hundred of the very same customers that they directly sold to Monitronics, as well hundreds of other Monitronics customers, all in violation of Defendants' Restrictive Covenants." *Id.*, ¶50. Plaintiff alleges that Defendants also induced Monitronics customers to stop making their monthly payments during the initial term of the customers' alarm monitoring contracts,

in breach of those customers' contracts. *Id.*, ¶53. Based on this conduct, Plaintiff asserts claims for breach of contract and tortious interference with existing contracts against Skyline and Arroyave. *Id.* at 12-17.

Defendants have filed separate Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), asserting nearly identical arguments that Plaintiff's Complaint fails to state a claim for relief. Skyline and Arroyave both contend that Plaintiff's allegations are factually insufficient to state a plausible claim for relief. Defendants also contend that Plaintiff's Complaint is fatally deficient because it relies on collective allegations and fails to distinguish the actions of each of them that give rise to their alleged liability. Plaintiff disputes that its Complaint fails to satisfy the federal pleading standards. The issues have been fully briefed, and the Motions are ripe for determination.

## Legal Standards and Analysis

### Motion to Dismiss

Fed. R. Civ. P. 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are not required, but the pleading must present more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

5

liable for the misconduct alleged. *Id*. at 556. A pleading that offers only "labels and conclusions" or "a formulaic recitation" of the elements of a cause of action will not suffice. *Id*. at 555.

## Breach of Contract

To state a claim for breach of contract under Texas law, a plaintiff must allege facts sufficient to show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Defendants' main argument is that Plaintiff's Complaint fails to adequately allege sufficient details regarding the nature of Defendants' alleged breach of the AMPA's restrictive covenants. Specifically, Defendants contend that the Complaint lacks factual allegations pertaining to: (1) the identity of the customers each Defendant allegedly solicited; (2) the dates on which the alleged solicitation occurred; and (3) whether the alleged solicitation was in violation of the fifteen-year restriction on solicitation of accounts originated and sold by Defendants to Plaintiff, or whether it was in violation of the two-year restriction on solicitation of any Monitronics customer. *See* Arroyave Br. [ECF #10] at 9-10; Skyline Br. [ECF #12] at 5-6. Such details, however, are not required to state a claim for breach of contract sufficient to withstand a Fed. R. Civ. P. 12(b)(6) challenge.

Plaintiff's Complaint must provide "more than an unadorned accusation devoid of factual support," but need not include detailed factual allegations. *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Twombly*, 550 U.S. at 570).

Defendants' suggestion that Plaintiff must set forth the "who, what, when, where, and how" of the alleged breach in order to state a claim invokes the heightened pleading standard of Fed. R. Civ. P. 9(b) for fraud claims, which does not apply to Plaintiff's contract claims. The Complaint need only provide the grounds for Plaintiff's entitlement to relief, which must be more than mere labels and conclusions or a formulaic recitation of the element of its cause of action. Here, Plaintiff's Complaint identifies the AMPA as a valid contract, binding as to both Skyline and Arroyave, and the Individual Non-solicitation Agreement as an additional valid contract, binding as to Arroyave. Pl. Compl. at 4-5, ¶¶ 10-19; 9, ¶¶ 40-41; 9-10, ¶¶42-44; & 12, ¶55. The Complaint alleges that Plaintiff performed its obligations under the AMPA, but that Defendants breached their agreements by soliciting, within days after the termination of the parties' relationship, nearly one hundred of the very same customers that Defendants directly sold to Monitronics, in violation of the restrictive covenants contained in paragraph 2.03(a) of the AMPA and the Individual Non-solicitation Agreement, as well hundreds of other Monitronics customers, in violation of the restrictive covenants contained in paragraph 2.03(b) of the AMPA. *See id.* at 11, ¶¶48-52; 12, ¶¶57-59. The Complaint further alleges that Defendants' violation of the non-solicitation restrictions has caused Plaintiff losses "well in excess of $75,000." *Id.* at 12, ¶59. These allegations state a claim for breach of contract that is plausible on its face and are sufficient to satisfy the requirements of Fed. R. Civ. P. 8(a)(2).

Defendants also contend that Plaintiff's claims should be dismissed because the Complaint uses collective allegations to refer to both Skyline and Arroyave rather than differentiating between the two Defendants. For example, Plaintiff alleges, "*Defendants* have breached *Defendants'* Restrictive Covenants based upon the solicitation or re-solicitation of

hundreds of Monitronics . . . customer accounts." Pl. Compl. at 12, ¶58 (emphasis added). In many cases, a complaint that "lumps together" multiple defendants' conduct fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 12(b)(6). *See, e.g., Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015). However, a pleading is not fatally deficient where, as here, it uses collective allegations to describe the actions of two or more defendants who are alleged to have engaged in the same conduct. *See United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.,* 2016 WL 5661644, at *9 (N.D. Tex. Sep. 30, 2016) (Lynn, C.J.) (finding collective allegations sufficient to state claim, even under the heightened pleading standard of Fed. R. Civ. P. 9(b)); *S.E.C. v. Couch*, 2014 WL 7404127, at *5 (N.D. Tex. Dec. 31, 2014) (Fitzwater, J.) (same). "Multiple defendants' conduct may be 'lumped together' if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role." *Bhatia v. Dischino*, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (Boyle, J.) (citing *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 274 (N.D. Tex. 1990).

In this case, Plaintiff's allegations, although collective, nonetheless afford each Defendant adequate notice of the alleged conduct on which Plaintiff's claims are based. The Complaint, read in its entirety, identifies the Defendants separately, alleging that Skyline is a corporation that is owned and controlled by Arroyave. Pl. Compl. at 2, ¶¶3-4. The Complaint also identifies the separate contractual provisions of the AMPA and the Individual Non-solicitation Agreement that allegedly establish liability as to each Defendant. *See id*. at 4-5, ¶¶13-14; 6-7, ¶¶27, 32, 40, 43. Specifically, the Complaint alleges that (1) paragraph 2.03(a) of the AMPA prohibits Skyline from soliciting alarm monitoring business on any customer account that Skyline originated and sold to Monitronics, for a period of fifteen years, and (2)

8

paragraph 2.03(b) prohibits Skyline from soliciting such business from any Monitronics customer for a period of two years after the termination of the AMPA. *Id.* at 6-8, ¶¶26-28, 31-34. The Complaint also alleges that Arroyave agreed to be individually bound to the non-solicitation restrictions of paragraphs 2.03(a) and (b) by signing page 15 of the AMPA and the Individual Non-solicitation Agreement. *Id.* at 9-10, ¶¶40-44. In this context, the Complaint does not fail to state a claim because it alleges that Defendants, collectively, solicited Monitronics customers in violation of the applicable restrictive covenants. *Id.* at 11, ¶¶49-50.

Arroyave also separately argues that Plaintiff's Complaint fails to plead the existence of a contract under which he is personally liable for any breach of the AMPA's provisions *by Skyline*. Arroyave acknowledges that the Complaint alleges that he signed page 15 of the AMPA, which provides:

> The persons listed below hereby represent and warrant that they are all the shareholders, partners, members or owners of Seller [Skyline], as applicable, and that they hereby *join in execution of this Agreement in order to signify their agreement to be personally bound by the non-solicitation provisions of Section 2.03, . . . as if each of their individual names were stated in place of "Seller" in Sections 2.03, . . .*

*See* Pl. Compl. at 9, ¶51; *see also id.*, Ex. A at 15 (emphasis added). Arroyave further appears to acknowledge that the Complaint alleges that this provision imposes individual liability on him for any breach of the AMPA's restrictions on solicitation of Monitronics customers. However, Arroyave disputes that Plaintiff has appropriately interpreted the legal effect of the agreement at page 15. Arroyave contends that he merely agreed to "step into the shoes of Skyline" and be personally bound by the AMPA's non-solicitation provisions. Arroyave Br. at 11. Stated differently, Arroyave contends that page 15 only makes him liable

9

for his own individual violations of the AMPA's non-solictation provisions. The Court declines, in the current procedural context, to resolve any disputes regarding the proper interpretation of the various provisions of the AMPA. In the context of the pending Motions to Dismiss, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Whether Plaintiff ultimately prevails on its interpretation of the agreement at page 15 is a matter for summary judgment or trial. Therefore, the Court DENIES Defendants' Motions to Dismiss Plaintiff's breach of contract claims.

## Tortious Interference

To state a claim for tortious interference with an existing contract, a plaintiff must allege facts showing: (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Here, Plaintiff alleges Monitronics enters into alarm monitoring agreements ("AMAs") with business and residential customers throughout the United States. Pl. Compl. at 4, ¶7. Monitronics also buys AMAs from dealers, like Skyline, which originate the customer relationship. *Id.*, ¶9. Indeed, Plaintiff alleges that Monitronics purchased approximately 30,000 AMAs from Skyline over the course of their five-year relationship. *Id.* at 5, ¶20. The AMAs are all valid contracts with a specific duration, generally from three to five years. *Id.* at 15, ¶¶78-79. Plaintiff alleges that "Defendants, acting on their own or by and through their agents, employees and representatives, willfully, knowingly and intentionally induced the AMA Customers to stop

making their monthly payments without any just right or excuse" and "cajol[ed] Monitronics AMA Customers to terminate their service without just cause or excuse . . . during the initial term of the AMA," knowing that termination of the AMA would result in a breach of the contract with Monitronics. *Id*., ¶¶80-81. Defendants argue that these allegations fail to state a claim for tortious interference with existing contracts because Plaintiff does not identify a specific contract that was the subject of any alleged interference and because Plaintiff did not adequately allege proximate cause.

As discussed above, Plaintiff's Complaint need not include factual allegations at the level of detail Defendants demand to satisfy the liberal pleading standards of Fed. R. Civ. P. 8. Plaintiff may not have described any particular customer AMA in detail, but the facts alleged are sufficient to allow the Court to reasonably infer the existence of contracts subject to interference. Plaintiff similarly is not required to allege in specific detail the precise manner in which Defendants allegedly interfered with the customer AMAs. The Complaint is not deficient because Plaintiff failed to allege that Defendants induced the breach by, for example, "offering better terms or other incentives." To establish proximate cause, a party must show that "'the defendant took an active part in persuading a party to a contract to breach it.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc*., 521 F.3d 472, 493 (5th Cir. 2008) (quoting *Davis v. HydPro, Inc*., 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)). The Complaint here alleges that Defendants "cajoled" Monitronics customers to terminate their service under the customers' AMA. This is sufficient to demonstrate, at this point in the litigation, that Defendants took an active part in persuading Monitronics customers to breach their contracts with Plaintiff.

11

Taking the facts alleged in Plaintiff's Complaint as true, and reading the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately stated a claim for tortious interference with an existing contract. Therefore, the Court DENIES Defendants' Motions to Dismiss Plaintiff's claims for tortious interference with an existing contract.

## Motion for a More Definite Statement

Finally, in the alternative to dismissal, Defendants seek a more definite statement under Fed. R. Civ. P. 12(e). Defendants rely on all the same arguments they made in support of their Motions to Dismiss to argue that Plaintiff's Complaint does not contain sufficient information to allow them to frame a responsive pleading. A motion for a more definite statement under Fed. R. Civ. P. 12(e) is available where the pleading is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). However, Fed. R. Civ. P. 12(e) should not be used as a substitute for discovery. *See Conceal City, L.L.C. v. Looper Law Enf't, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013); *Arista Records LLC v. Gr*eubel, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006). A plaintiff cannot be required to amend its complaint under Fed. R. Civ. P. 12 if, under Fed. R. Civ. P. 8, the complaint is sufficient to withstand a motion to dismiss. *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). Here, Plaintiff's Complaint gives fair notice to Defendants of Plaintiff's claims for breach of contract and tortious inference. The issues raised by Defendants are those that can be clarified and developed during discovery, not ones that impede Defendants' ability to form a responsive pleading. Accordingly, Defendants' Motion for More Definite Statement is DENIED.

**Conclusion**

For the reasons stated, the Court DENIES the Fed. R. Civ. P. 12(b)(6) Motions to Dismiss, and, in the alternative, Fed. R. Civ. P. 12(e) Motions for More Definite Statement, filed by Skyline Security Management, Inc. [ECF #9] and Edwin Arroyave [ECF #11].

SO ORDERED.

Dated: July 5, 2017.

_____
BARBARA M. G. LYNN
CHIEF JUDGE